## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Juan De La Rosa Romero and Raul Lopez Ramirez | : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO: |
| v. | : : | |
| Stratford Dry Cleaners and Jeff Wi | : : : | November 14, 2016 |
| Defendants | : : | |

## **COMPLAINT**

1. The Defendants employed Plaintiffs Juan De La Rosa Romero and Raul Lopez Ramirez in their dry cleaning business. Juan De La Rosa Romero and Raul Lopez Ramirez worked over forty hours for the Defendants in nearly every week of their employment, yet never received an overtime premium for those hours. At work, Plaintiffs also suffered repeated sexual harassment by their supervisor, Defendant Jeff Wi, causing them humiliation, anxiety, and discomfort in the workplace. Despite Plaintiffs' multiple pleas to stop, Defendant Wi continued groping and trying to grope Plaintiffs throughout the course of their employment, continuing also to induce severe emotional distress in the Plaintiffs' lives. Plaintiffs bring this action to recover unpaid overtime wages, compensatory, punitive, and nominal damages, costs, and attorney's fees under the Fair Labor Standards Act and Connecticut statutory provisions.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this complaint occurred within this judicial district.

## THE PARTIES

4. Plaintiff Juan De La Rosa Romero worked for the Defendants in their dry cleaning store located at 281 Ferry Boulevard in Stratford, Connecticut. At all times relevant to the Complaint, Juan De La Rosa Romero was an employee within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(e)(1) and Connecticut General Statutes §§ 31-58(e) and 31-71a(2).

5. Plaintiff Raul Lopez Ramirez worked for the Defendants in their dry cleaning store located at 281 Ferry Boulevard in Stratford, Connecticut. At all times relevant to the Complaint, Raul Lopez Ramirez was an employee within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(e)(1) and Connecticut General Statutes §§ 31-58(e) and 31-71a(2).

6. Defendant Stratford Dry Cleaners is a domestic corporation registered in Connecticut that:

(a) Has a business address of 281 Ferry Boulevard in Stratford, Connecticut, in addition to three other locations in Connecticut;

(b) Has done more than $500,000 of business per year across its four locations in Connecticut;

(d) Purchased and used materials, such as cleaning chemicals, that originated outside of Connecticut;

(e) Hired, paid, supervised, and scheduled Plaintiffs; and

(f) Therefore was an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d) and Connecticut General Statutes §§ 31-58(d) and 31-71a(1).

7. Defendant Jeff Wi resides in Connecticut. Defendant Jeff Wi:

(a) Operates Stratford Dry Cleaners and is its owner;

(b) Had the power to hire, pay, schedule, and supervise Stratford Dry Cleaners employees, including Juan De La Rosa Romero and Raul Lopez Ramirez;

(c) Exercised these powers over Plaintiffs, including personally hiring Plaintiffs, personally giving Plaintiffs' their paychecks, personally scheduling Plaintiffs' hours, and personally overseeing Plaintiffs' work; and

(d) Therefore was an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d) and Connecticut General Statutes §§ 31-58(d) and 31-71a(1).

## FACTS

### *Juan De La Rosa Romero*

8. Juan De La Rosa Romero worked for the Defendants from November 27, 2013 to August 20, 2016.

9. Defendants paid Juan De La Rosa Romero at a weekly fixed salary for a regular workweek of sixty-eight hours. Defendants paid Juan De La Rosa Romero $600 per week from November 2013 through February 2014, $700 per week from March 2014 through the end of July 2015, and $720 per week from the August 2015 through the end of his employment.

10. Defendants did not pay Juan De La Rosa Romero an overtime premium for the hours he worked above forty in a week.

11. During nearly every week of his employment for the Defendants, Juan De La Rosa Romero worked sixty-eight hours per week without any premium for overtime worked. For example:

(a) He worked sixty-eight hours during the week of November 27, 2013 to December 4, 2013 but received no overtime premium for the twenty-eight hours he worked above forty;

(b) Again, he worked sixty-eight hours during the week of November 5, 2014 to November 12, 2014 but received no overtime premium for the twenty-eight hours he worked above forty;

(c) Likewise, he worked sixty-eight hours during the week of April 8, 2015 to April 15 2015 with no overtime premium;

(d) He worked sixty-eight hours during the week of April 6, 2016 to April 13, 2016, again without an overtime premium;

(e) And again, he worked sixty-eight hours during the week of August 10, 2016 to August 17, 2016 but received no overtime premium for the twenty-eight hours he worked above forty.

12. On at least one occasion, Juan De La Rosa Romero was not paid at all for the hours he worked for the Defendants on a day when he had arrived somewhat late to the store.

13. Juan De La Rosa Romero also suffered from sexual harassment in the Defendants' workplace in the form of repeated groping and sexual comments from his boss, Defendant Jeff Wi.

14. In April 2014, as Juan De La Rosa Romero received his paycheck, Defendant Jeff Wi grabbed Mr. Romero's penis. Mr. Romero told Defendant Wi that that behavior was inappropriate and asked Defendant Wi not to do that again. Defendant Wi laughed.

15. In August 2014, Defendant Jeff Wi grabbed Juan De La Rosa Romero's penis while they were in the workplace.

16. In 2015, Defendant Jeff Wi tried to grope Juan De La Rosa Romero multiple times while in the workplace, but Mr. Romero managed to escape Defendant Wi's grasp each of those times.

17. On April 4, 2016, Defendant Jeff Wi walked up behind Juan De La Rosa Romero while he was working and grabbed his buttocks. Defendant Wi then commented aloud that Mr. Romero had "a small ass," and he grabbed Mr. Romero's buttocks a second time.

18. On May 10, 2016, Juan De La Rosa Romero was talking with Defendant Jeff Wi in the workplace, when Defendant Wi tried to grab his penis. On that occasion, Mr. Romero was able to dodge Defendant Wi's grasp.

19. On multiple occasions from 2014 to 2016, Defendant Jeff Wi repeatedly stroked Juan De La Rosa Romero's face while in the workplace.

20. Juan De La Rosa Romero talked to Defendant Jeff Wi numerous times to try to get Defendant Wi to stop groping him and his co-worker, Raul Lopez Ramirez. Defendant Wi did not comply with Mr. Romero's repeated pleas to stop groping him and touching him in other inappropriate ways.

21. Juan De La Rosa Romero suffered severe emotional distress from the groping and comments from his boss, Defendant Wi. Due to Defendant Wi's harassment, Mr. Romero felt unsafe and uncomfortable in the workplace and constantly nervous that he would be groped. Mr.

Romero felt that he had to be hypervigilant anytime that Defendant Wi was present at the store, making each day of his employment a stressful one. Mr. Romero felt angry and afraid due to Defendant Wi's harassment, and ultimately that harassment proved so intolerable that Mr. Romero decided to leave his job with the Defendants.

### *Raul Lopez Ramirez*

22. Raul Lopez Ramirez worked continuously for the Defendants from April 20, 2013 to August 6, 2016.

23. Defendants paid Raul Lopez Ramirez at a weekly fixed salary for a workweek in excess of forty hours from the start of his employment through the end of April 2016. Defendants paid Raul Lopez Ramirez $450 per week at the start of his employment, and his salary gradually increased to $600 per week as of September 2015. His regular salary remained at $600 per week until Defendants reduced his salary back to $520 per week in March 2016.

24. In May 2016, Defendants began to pay Raul Lopez Ramirez on an hourly basis instead of a weekly fixed salary. Starting at that time, his work hours were also decreased.

25. Defendants did not pay Raul Lopez Ramirez an overtime premium for the hours he worked above forty in a week.

26. From the start of his employment for the Defendants through the end of March 2016, Raul Lopez Ramirez worked between 41.5 and 55 hours per week without any premium for overtime worked. For example:

(a) He worked approximately fifty-five hours during the week of May 7, 2014 to May 14, 2014 but received no overtime premium for the fifteen hours he worked above forty;

(b) Again, he worked approximately fifty-five hours during the week of November 5, 2014 to November 12, 2014 but received no overtime premium for the fifteen hours he worked above forty;

(c) Likewise, he worked approximately fifty hours during the week of April 8, 2015 to April 15, 2015 with no overtime premium;

(d) He worked approximately fifty-five hours during the week of November 4, 2015 to November 11, 2015, again without an overtime premium;

(e) And again, he worked approximately forty-five hours during the week of March 23, 2016 to March 30, 2016 but received no overtime premium for the hours he worked above forty.

27.    On at least one occasion, Raul Lopez Ramirez was not paid at all for a full day's work for Defendants. Mr. Ramirez was told that he would not be paid for his work that day because of the tardiness of his coworker—a circumstance wholly beyond Mr. Ramirez's control.

28.    Raul Lopez Ramirez also suffered from sexual harassment in the Defendants' workplace in the form of groping from his boss, Defendant Jeff Wi.

29.    In February 2016, Defendant Jeff Wi groped Raul Lopez Ramirez when he gave Mr. Ramirez his paycheck.

30.    On April 12, 2016, Defendant Jeff Wi complimented Raul Lopez Ramirez on his work and then grabbed Mr. Ramirez's buttocks from behind.

31.    On May 4, 2016, when Defendant Jeff Wi was showing Raul Lopez Ramirez how to use the payment system, Defendant Wi tried to grab Mr. Ramirez's penis. On that occasion, Mr. Ramirez managed to push Defendant Wi away and avoided his grasp.

32.     On about eight additional occasions, beginning in late 2013, Defendant Jeff Wi groped or attempted to grope Raul Lopez Ramirez in the workplace.

33.     Multiple times, Raul Lopez Ramirez complained to Defendant Jeff Wi about the groping and told Defendant Wi to stop. Defendant Wi did not stop. Defendant Wi just laughed at him.

34.     Raul Lopez Ramirez suffered severe emotional distress due to the groping from his boss, Defendant Wi. The harassment made Mr. Ramirez feel distrustful and uncomfortable in the workplace. Mr. Ramirez felt that he always had to be alert and look over his shoulder when Defendant Wi was present overseeing the store. The harassment made it more difficult for Mr. Ramirez to get his work done, amidst the stress of always feeling afraid that he would be groped. Defendant Wi's harassment made Mr. Ramirez feel nervous and angry. Mr. Ramirez became so angry with the unceasing harassment that he grew worried he might punch Defendant Wi if given the opportunity. The situation became so unbearable that Mr. Ramirez decided to leave his job with the Defendants despite financial pressure to continue bringing home a salary.

## COUNT ONE – FAIR LABOR STANDARDS ACT
**(Overtime)**

35.     By the conduct described above, Defendants violated the Plaintiffs' right to be paid an overtime premium consistent with the provisions of the Fair Labor Standards Act, 29 U.S.C. §201, et seq.

36.     Defendants' conduct, as described above, was in willful violation of the Plaintiffs' rights pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. §201, et seq. As a result of the Defendants' unlawful conduct, the Plaintiffs have suffered a loss of compensation from employment that is due and owing to them.

## COUNT TWO – CONNECTICUT GENERAL STATUTES § 31-58, *et seq.*
### (Overtime)

37. By the conduct described above, Defendants violated the Plaintiffs' right to be paid an overtime premium in violation of Connecticut General Statutes §§ 31-60a and 31-76c.

38. Defendants' violation of the Connecticut General Statutes was made in bad faith. As a result of the Defendants' unlawful conduct, the Plaintiffs have suffered a loss of compensation from employment that is due and owing to them.

## COUNT THREE – ASSAULT AND BATTERY

39. By the conduct described above, Defendant Wi committed assault and battery by his repeated sexual harassment of Plaintiffs. On numerous occasions, he intentionally made offensive contact with both Plaintiffs by grabbing their genitalia. On other occasions, he intentionally placed Plaintiffs in apprehension of such contact by attempting to grab their genitalia. In none of these incidents did Plaintiffs consent to the contact or apprehension of such contact.

40. As described in the facts above, Plaintiffs suffered severe emotional distress as a result of Defendants' sexual harassment.

## COUNT FOUR – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41. By the conduct described above, Defendant Wi intentionally inflicted emotional distress on Plaintiffs through repeated sexual harassment. Defendant Wi intentionally grabbed Plaintiff's genitalia with the knowledge that such sexual harassment was likely to result in emotional distress. His conduct was extreme and outrageous, going beyond mere utterances or suggestive gestures to in fact make repeated physical and sexual contact with Plaintiffs' penises and buttocks.

42. As described in the facts above, Plaintiffs suffered severe emotional distress as a result of Defendants' sexual harassment.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiffs pray that the Court award them:

1. All compensation due and owing to them by the Defendants;

2. Liquidated damages in equal amount to their unpaid overtime wages pursuant to 29 U.S.C. § 216(b);

3. Double damages for any violation of C.G.S. § 31-60 pursuant to C.G.S. § 31-68;

4. Double damages for any violation of C.G.S. § 31-71a to 31-71i pursuant to C.G.S. § 31-72;

5. Compensatory damages;

6. Punitive damages for Defendants' malicious and recklessly indifferent conduct;

7. Nominal damages;

8. Plaintiffs' costs and reasonable attorney's fees pursuant to 29 U.S.C. § 216(b) and C.G.S. §§ 31-68 and 31-72;

9. Such other legal or equitable relief as the Court may deem just.

                                    THE PLAINTIFFS

                                    By:   ___/s/_____
                                          James Bhandary-Alexander
                                          Ct28135
                                          New Haven Legal Assistance Assoc.
                                          426 State Street
                                          New Haven, CT 06510
                                          (203) 946-4811
                                          (203) 498-9271 fax
                                          Email: jbhandary-alexander@nhlegal.org
                                          Their Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2016, a copy of the foregoing Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ James Bhandary-Alexander